IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

TERRY DEGRAW,

        Plaintiff,

vs.                              **Case No. 09-4016-RDR**

EXIDE TECHNOLOGIES,

        Defendant.

## MRMORANDUM AND ORDER

This case is before the court upon plaintiff's motion for reconsideration of this court's order granting defendant's motion for summary judgment.

<u>Legal standard</u>

A motion for reconsideration is treated like a motion to alter or amend judgment pursuant to FED.R.CIV.P. 59(e). Local Rule 7.3(a). Relief under Rule 59(e) may be granted only if the moving party can establish: 1) an intervening change in the controlling law; 2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or 3) the need to correct clear error or prevent manifest injustice. <u>Satterlee v. Allen Press, Inc.</u>, 455 F.Supp.2d 1236, 1241 (D.Kan. 2006) (citing <u>Brumark Corp. v. Samson Res. Corp.</u>, 57 F.3d 941, 948 (10th Cir. 1995)). A motion for reconsideration is an "inappropriate vehicle to reargue an issue previously addressed by the court when the motion merely advances new arguments, or

supporting facts which were available at the time of the original motion. . . . Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted).

Court's prior order

The court's summary judgment order addressed two major claims: retaliation against the exercise of plaintiff's worker's compensation rights; and violation of plaintiff's rights under the Family and Medical Leave Act (FMLA). Plaintiff argued that he was terminated in retaliation for the exercise or potential exercise of his worker's compensation rights. Defendant argued that it relied upon Dr. David Hanson's opinion that for medical reasons plaintiff should not return to his job with defendant. The court held that plaintiff could not demonstrate that defendant's reliance upon Dr. Hanson's opinion was a pretext for illegal retaliation.

Regarding plaintiff's FMLA claims, the court held that plaintiff was not retaliated against or discriminated against for exercising his rights under the FMLA because he had used FMLA leave previously without retaliation or discrimination and because he was terminated from his position because defendant believed his medical condition prevented him from performing his job. The court further

held that defendant did not interfere with plaintiff's exercise of FMLA rights by forcing plaintiff to take FMLA leave when plaintiff wanted to work or by denying plaintiff the right to reinstatement after his FMLA leave had expired.

Plaintiff's arguments for reconsideration of his worker's compensation retaliation claim

Plaintiff's first argument for reconsideration is that the court glossed over the fact that, after plaintiff reported a work-related injury on August 7, 2006, he was removed from work without any evidence that he was not able to work. The court rejects this point. The court referred to the events of August 2006 frequently in the summary judgment order and considered the question of whether they created a jury issue regarding pretext. Plaintiff argues that "defendant's retaliatory conduct must be measured at the point in time when defendant removed [plaintiff] from work on August 7, 2006 without any reason." Doc. No. 110 at p. 3. The court certainly did consider the alleged retaliatory conduct from August 7, 2006 forward in rendering a decision.

It was undisputed that plaintiff was terminated from employment by defendant on January 23, 2007, not August 7, 2006. Compare defendant's SOF # 210 at Doc. 95 p. 26 with plaintiff's response at Doc. 102 p. 44. Plaintiff did not argue that he was actually terminated in August 2006. Nor did plaintiff argue that he was asking to recover for worker's compensation retaliation by

3

any means other than termination. See final pretrial order, Doc. 92 at pp. 7-10 & 17-18 (listing termination as the retaliatory action, listing termination as an element of recovery, and listing loss of wages after December 23, 2006 as plaintiff's damages).[1] In sum, the court considered the events of August 2006 in determining the question of pretext. The court did not consider whether plaintiff was terminated from employment on August 2006 because plaintiff did not make that argument; nor does the record appear to support such an argument.

Next, plaintiff argues that defendant cannot justify terminating plaintiff on the basis of "after-acquired evidence" that plaintiff was not able to perform the required work. We also reject this argument. Plaintiff was terminated on January 23, 2007. On December 21, 2007, plaintiff was told by defendant's human resources manager, Jayne Cornish, that she did not believe he could perform the work required by his position and that defendant would see if other jobs with the company were available for plaintiff. Plaintiff was terminated on January 23, 2007 when no other jobs were found for plaintiff. There is no indication that the decision to terminate plaintiff was based upon "after-acquired evidence" unless one decides that plaintiff was terminated in

---

[1] In the final pretrial order, plaintiff listed December 23, 2006 as the termination date, although he later agreed in response to defendant's summary judgment motion that the termination date was January 23, 2007.

August 2006.  As already mentioned, this was not argued by plaintiff prior to the summary judgment motion or asserted in the final pretrial order.[2]  Moreover, the summary judgment record does not support plaintiff's "after-acquired evidence" contention.  The record indicates that Jayne Cornish consulted with Dr. Hanson regarding plaintiff's medical condition and Dr. Hanson informed Cornish that he did not believe it was safe for plaintiff to return to plaintiff's job.  See Cornish deposition, Doc. No. 95, Ex. 2 at pp. 43-45 and Cornish deposition, Doc. No. 102, Ex. 2 at pp. 56-57, 73; Carpenter deposition, Doc. No. 95, Ex. 3 at p. 13 and Carpenter deposition, Doc. No. 102, Ex. 2 at pp. 24, 34; Hanson deposition, Doc. No. 102, Ex. 3 at p. 62.  After this consultation, the decision was made to ban plaintiff from returning to his position and later to terminate plaintiff's employment entirely.

Plaintiff next argues that the court disregarded plaintiff's contention that Dr. Hanson was directed by Jayne Cornish to refuse to release plaintiff to return to his job.  This is incorrect; the court addressed the issue at page 30 of the summary judgment order.  Plaintiff draws his argument from what he describes as Dr. Hanson's clear and unequivocal testimony that he was supervised by Cornish.

---

[2] The parties are bound by the contents of a pretrial order unless the order is modified to prevent injustice.  See Wilson v. Muckala, 303 F.3d 1207, 1215-16 (10th Cir. 2002)(the pretrial order supersedes the pleadings and establishes the issues to be considered at trial); Perry v. Winspur, 782 F.2d 893, 894 (10th Cir. 1986).

5

Actually, in his deposition Dr. Hanson agreed to a characterization that Cornish was "sort of" his supervisor and that she would provide him direction as to "what kinds of things to do." Hanson deposition, Doc. No. 102, Ex. 3 at p. 7. To the court, this is less than clear and unequivocal, and in any event does not support plaintiff's contention that Dr. Hanson gave medical opinions as dictated by defendant. Indeed, a fair review of the summary judgment record could not lead to a reasonable conclusion that Dr. Hanson molded his medical opinions according to the directions of Jayne Cornish or anyone else at defendant. Dr. Hanson specifically denied doing so when he testified that after August 22, 2006 he was not asked by anyone working for defendant to refuse plaintiff a release to return to work. Hanson deposition, Doc. No. 102, Ex.3 at p. 63.

Plaintiff follows this argumentation with additional points which either were or could have been raised in his response to the summary judgment motion. Plaintiff argues that Dr. Hanson did not place restrictions on plaintiff's work capacity and was unwilling to say in his deposition whether he knew if plaintiff was able to perform duties requiring occasional walking, sitting, lifting, bending and twisting in January 2007 (the month following the denial of his release to return to work). These arguments do not reach the critical issue of pretext. Defendant asked Dr. Hanson for an opinion in December 2006. Dr. Hanson rendered the opinion

in December 2006 after ordering an MRI and reviewing it.  He did not examine or discuss the matter with plaintiff and was not placed in a position to give restrictions <u>to plaintiff</u>, although the opinion he gave to Cornish obviously was that it was unsafe for plaintiff to return to his job.  He was not plaintiff's doctor.  Nor was he asked by plaintiff or defendant to examine plaintiff or otherwise assess his fitness for work in January 2007.  Defendant's arguments do not suggest to the court that defendant's reliance upon Dr. Hanson's opinion was a pretext for retaliation.

Plaintiff contends that the most damaging evidence of pretext is that Cornish asked Dr. Hanson to write a note regarding plaintiff's situation which could be sent to a short-term disability insurance carrier to help plaintiff obtain short-term disability benefits.  Dr. Hanson did dictate such a note, which was undated.  The note did not persuade the insurance carrier to grant disability benefits.

Plaintiff contends this represents a disturbing irregularity which is proof of pretext.  But, proof of an irregularity requires proof of the standard or ordinary procedure.  There is no argument which substantiates that there was a variance from defendant's standard procedure or policy in these matters. Defendant asked Dr. Hanson to give a clearance for plaintiff to return to work, as previously done in June, July, and August 2006 as well as in 2003 and 2005 with regard to plaintiff.  The absence of a date on a memo

7

may be a departure from form, but not a significant one in the general context of the summary judgment record. There is no indication that Dr. Hanson's opinion regarding plaintiff changed substantially after he first saw plaintiff's CT scan in August 2006. Plaintiff does not persuasively contend that Dr. Hanson's opinion changed suspiciously over the course of time or claim that the undated memo does not reflect Dr. Hanson's genuine opinion.

Plaintiff does argue in the motion for reconsideration, as he did in response to the summary judgment motion, that defendant and Dr. Hanson allowed plaintiff to return to work <u>until</u> plaintiff claimed a job-related injury. The court addressed this argument at pages 23-24 of the summary judgment order. The "change" in Dr. Hanson's opinion is not suspicious for the reasons discussed there and elsewhere in the order.

Plaintiff also argues that the memo shows that Dr. Hanson took orders from Jayne Cornish. It does show that Dr. Hanson dictated a note regarding an employee when one was requested by Cornish. It does not show that Cornish controlled what Dr. Hanson said in the note. Therefore, it is not proof of pretext.

After a careful review of the issues raised in the motion for reconsideration, the court believes that there are no grounds to alter or amend the court's decision as to plaintiff's worker's compensation retaliation claim.

<u>Plaintiff's arguments for reconsideration of his FMLA claims</u>

8

Plaintiff argues that the court's rulings upon his FMLA claims are internally inconsistent. The court made the following rulings regarding plaintiff's FMLA claims. First, the court held that plaintiff could not show that he was retaliated or discriminated against for FMLA protected activity. Plaintiff does not address this ruling in his motion for reconsideration. The court also held that plaintiff could not succeed in claiming that his FMLA rights were violated when he was forced to take FMLA leave involuntarily. The court stated that plaintiff did not claim that he was denied FMLA leave when he requested it and that the facts of this case did not support an FMLA interference claim as discussed in four different cases. Finally, citing multiple cases, the court held that plaintiff's right to reinstatement under the FMLA was not violated because his right to reinstatement expired when his FMLA leave expired, which was before he was released to return to work.

The inconsistency charged by plaintiff essentially argues that the alleged involuntary placement of plaintiff upon FMLA leave impinged upon his right to reinstatement under the FMLA because it led to the exhaustion of plaintiff's FMLA leave. This is a different argument than plaintiff made in his response to the summary judgment motion. But, in any event, it should be rejected because, as detailed in defendant's response to the motion for reconsideration, there were more than 12 weeks of FMLA leave granted to plaintiff which were not involuntary. Plaintiff

9

exhausted his allotted 12 weeks of FMLA leave long before his date of termination and even before his meeting with Jayne Cornish in December 2006.  Therefore, plaintiff cannot claim that his alleged "involuntary" placement on FMLA leave impinged upon his right to reinstatement.

Plaintiff further suggests that he was never placed on FMLA leave, claiming a lack of evidence or records that show he was placed on FMLA leave or that plaintiff was informed that his FMLA leave had expired.  The court rejects this point because there is an affidavit from Jayne Cornish which states that plaintiff took FMLA leave and applied for and received short-term disability benefits for June 2, 2006 through July 15, 2006 and from August 10, 2006 through the exhaustion of his FMLA leave and short-term disability benefits.  Doc. No. 95, Exhibit 25; see also Cornish deposition, Doc. No. 95, Ex.2 at pp. 49-50.  Furthermore, if plaintiff was not placed on FMLA leave as he suggests, then he could not claim that defendant interfered with his right to reinstatement upon return from FMLA leave.

Conclusion

In conclusion, for the above-stated reasons the court shall deny plaintiff's motion for reconsideration.

**IT IS SO ORDERED.**

Dated this 13th day of December, 2010 at Topeka, Kansas.

s/Richard D. Rogers

United States District Judge